**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2013 DEC 12   AM 9: 42

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____

BASIL BROWN II,

          **Plaintiff,**

-vs-

**TEXAS STATE UNIVERSITY SYSTEM BOARD
OF REGENTS, TEXAS STATE UNIVERSITY,
DONNA WILLIAMS, BRIAN McCALL, DENISE
TRAUTH, CHRISTOPHER MURR, LARRY
TEIS, DANIEL KASPAR, ROBERT FLASKA,
and JASON KARLIC,**

          **Defendants.**

Case No.  A-13-CA-483-SS

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Amended Motion to Dismiss [#93]; and Plaintiff's Amended Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Educational Records [#96], Defendants' Response [#97], and Plaintiff's Reply [#98]; and Plaintiff's Motion for Extension of Time to File Response to Defendants' Amended Motion to Dismiss [#99].  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

Plaintiff Basil Brown II (Brown) was a member of the Texas State University (TSU) men's basketball team and was on scholarship.  This lawsuit derives from TSU's decision to remove Brown from the basketball team and terminate his scholarship.  In his Amended Complaint, Brown,

proceeding pro se, alleges a number of causes of action including constitutional violations, violations of federal statutes, and common law claims.  Specifically, Brown alleges: (1) violations of various National Collegiate Athletic Association (NCAA) Rules; (2) violation of Title IV of the Civil Rights Act of 1964 (Title IV); (3) breach of contract; (4) retaliation; (5) violations of the Family Educational Rights and Privacy Act (FERPA) and the Health Insurance Portability and Accountability Act (HIPAA); (6) violations of Brown's constitutional right to due process under the Fourteenth Amendment; (7) violations of Brown's constitutional right to equal protection under the Fourteenth Amendment; (8) violations of 42 U.S.C. § 1983; (9) "discrimination of one" (10) disability discrimination; (11) collusion; and (12) gross negligence.  Brown seeks various forms of relief including: (1) damages—liquidated, compensatory, and punitive; (2) an order reinstating Brown on the TSU basketball team; and (3) an order reinstating Brown's athletic scholarship.

On November 18, 2013, Defendants filed their Amended Motion to Dismiss [#93] all claims brought by Brown.  On November 25, 2013, Brown filed an Amended Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Educational Records [#96], and Defendants filed their Response [#97] on November 26, 2013.  To date, Brown has not filed a response to the Amended Motion to Dismiss, and the fourteen day period for filing a timely response has lapsed.  On December 9, 2013, Brown filed a Motion for Extension of Time to File Response [#99].  The Court now considers Defendants' Amended Motion to Dismiss [#93] as well as Plaintiffs' Corrected Emergency Motion to Reconsider [#96] and Plaintiff's Motion for Extension of Time [#99].

## Analysis

### I.       Legal Standards

### A.       Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction, and they may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which subject matter jurisdiction may be challenged. Thus, the burden of establishing subject matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).

In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In conducting its inquiry, the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Id.* The Court must take the allegations of the complaint as true and draw all inferences in the plaintiff's favor. *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

**B.**     **Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.  In deciding a motion to dismiss, courts may  consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.     Application

## A.     Sovereign Immunity and Qualified Immunity

As an initial matter, Brown is suing a number of different defendants, which may be protected from suit in federal court by the doctrines of sovereign and qualified immunity. Brown sued (1) the Texas State University System Board of Regents (TSUS), and (2) TSU. Brown also sued individual employees of TSU in their individual and official capacities including: (3) Donna Williams—the chairperson of TSUS; (4) Brian McCall—the chancellor of TSUS; (5) Fernando Gomez—the vice chancellor and general counsel of TSUS; (6) Denise Trauth—the president of TSU; (7) Christopher Murr—the director of financial aid and scholarships at TSU; (8) Larry Teis—the athletic director at TSU; (9) Daniel Kaspar—the head men's basketball coach at TSU; (10) Robert Flaska—an assistant men's basketball coach at TSU; (11) Jason Karlic—an assistant trainer and the trainer for men's basketball at TSU; (12) Herman Horn—the Chief Diversity Officer at TSU; and (13) Ismael Amaya—an Assistant Dean of Students and the student justice coordinator at TSU.

The Eleventh Amendment to the United States Constitution bars suits brought in federal court against a state. U.S. CONST. amend. XI. Absent waiver, the immunity afforded by the Eleventh Amendment applies regardless of the relief sought, and this immunity extends to state agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). There is no dispute TSU and its board of regents—TSUS—qualifies as a state agency. *See* TEX. EDUC. CODE ANN. § 61.003(3); *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). And there is no contention TSU or TSUS has consented to suit. Accordingly, Defendants TSU and TSUS are

immune from Brown's suit, and Defendants' Motion to Dismiss, as it relates to claims against TSU and TSUS, is GRANTED.

With respect to the individual defendants sued, the Eleventh Amendment does not preclude suits against state officers for prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908). Furthermore, the Eleventh Amendment does not prevent suits against state officers for money damages to be paid out of the individual's own pockets, even when the damages are retrospective compensation for past harms. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). This type of suit is referred to as suing the individuals in their "individual capacity." In addition, the Eleventh Amendment does not prohibit a federal court from giving injunctive relief against a state officer even though compliance with the injunction will cost the state money in the future. *See Graham v. Richardson*, 403 U.S. 365 (1971). The Eleventh Amendment does, though, prevent a federal court from awarding retroactive relief—damages to compensate past injuries—when those damages will be paid by the state treasury. *See Quern v. Jordan*, 440 U.S. 332 (1979). If the recovery will be from the state treasury, the suit can be said to be against the officer in an "official capacity." Accordingly, to the extent Brown sues the individual Defendants in their official capacity, those claims are barred by the Eleventh Amendment, and the Defendants' Amended Motion to Dismiss, with respect to these claims, is GRANTED.

Even if the Eleventh Amendment does not bar the suit, however, the doctrine of qualified immunity shields government officials performing discretionary functions from liability as well as from suit. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). A plaintiff bears

the burden of negating a properly raised qualified immunity defense. *Id.* The qualified immunity analysis itself involves two considerations: (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal quotation marks and citations omitted). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

The individual defendants—as employees of TSU and therefore government officials—invoke qualified immunity in their motion to dismiss, and this analysis provides a backdrop for all of Brown's claims against the individual defendants.

## B.    Violations of NCAA Rules

Brown alleges all of the Defendants violated NCAA Rules when they:

> (1) failed to provide the Plaintiff with a grant-in-aid agreement that contained language consistent with a full grant-in-aid agreement as defined by NCAA bylaw 15.02.5, (2) provided the Plaintiff with a grant-in-aid agreement that reduces the Plaintiffs grant-in-aid from the previous academic year after the deadline for reducing the Plaintiff's grant-in-aid for the following academic year has passed, (3) actually reduced the Plaintiff's aid for Summer I prior to a hearing being held on Plaintiff's appeal of Defendant's decision to cancel his athletic scholarship, (4) failed to provide the Plaintiff with a grant-in-aid agreement that conforms to the renewal notice submitted to the Plaintiff on June 17, 2013. The aforementioned acts are willful violations of various NCAA Bylaws including bylaws 15.02.5 and 15.3.5.

Am. Compl. [#51], at 40.

First, to the extent Brown brings this claim against TSU and TSUS, these Defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these claims against the individual defendants in their individual capacities, Brown fails to show how violations of NCAA Rules amount to conduct violating a clearly established constitutional right. In other words, qualified immunity protects the individual defendants from these claims of NCAA Rules violations. Because sovereign immunity and qualified immunity operate to shield the Defendants from the claims based on NCAA Rules violations, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

In the alternative, Brown cites no authority—and the Court is unfamiliar with any authority—indicating violations of NCAA Rules may provide the basis for a cause of action in federal court. On these grounds, Brown's claims also fail.

## C.   Violation of Title IV of the Civil Rights Act of 1964

Brown alleges all of the Defendants violated Title IV of the Civil Rights Act of 1964 when:

(1) Daniel Kaspar denied the Plaintiff the opportunity to beat out Reid Koenen for the retention of the Plaintiff's athletic scholarship for the following academic year because Daniel Kaspar believes that the only reason that the Plaintiff is able to beat Reid Koenen in basketball is because Reid Koenen happens to be white and the Plaintiff is black and white players are slower than black players because of race, (2) Daniel Kaspar rendered Reid Koenen immune to a competition with the Plaintiff for an athletic scholarship retention for the following academic year because Reid Koenen is white and the Plaintiff is black, (3) Daniel Kaspar used race as a deciding factor in determining whether Reid Koenen would retain his athletic scholarship, as opposed to the Plaintiff, for the following academic year (4) Daniel Kaspar scolded the Plaintiff in front of other players in practices for taking advantage of Reid Koenen in practice by out-performing him in basketball because Reid Koenen is white and the Plaintiff is black, and (5) made racially disparaging remarks to other black players

-8-

in practice by stating that the black players would be faster if they ran as if they were running from the police back at home.

Am. Compl. [#51], at 41–42.

First, to the extent Brown brings this claim against TSU and TSUS, these Defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, Title IV of the Civil Rights Act is designed to encourage the desegregation of public schools and authorizes the Secretary of Education to render "technical assistance" in the "preparation, adoption, and implementation of plans for the desegregation of public schools." 42 U.S.C. § 2000c-2. Title IV further creates a cause of action, but this action may only be initiated by the Attorney General after receipt of a complaint and other procedural standards are satisfied. *See id.* § 2000c-6. Title IV does not, however, create a private cause of action or, at least, there is no indication in the statute there is authorization for private causes of action. Brown does not cite to any authority indicating such a private cause of action exists. Therefore, Brown fails to state a claim against Defendants based on Title IV, and Defendants' Amended Motion to Dismiss, with respect to claims based on Title IV, is GRANTED.

## D.   Breach of Contract

Brown alleges all of the Defendants breached a contract with Brown when they:

(1) refused to pay the Plaintiff medical bills for surgeries due to injuries sustained while participating in men's basketball at TSU according to policy, (2) denied the Plaintiff access to Summer I or Summer II under his men's basketball scholarship even though summer school is an extension of his athletic scholarship from the previous academic year as the Plaintiff had already notified TSU of his intention to attend summer school in March 2013, (3) failed to provide the Plaintiff with a grant-in-aid agreement that contained language conforming to the renewal letter submitted,

and agreed, to by the Plaintiff on July 3, 2013 after the deadline for a scholarship reduction had already expired on July 1, 2013.

Am. Compl. [#51], at 42–43.

Under Texas law, the elements of a breach of contract claim are: (1) there is a valid, enforceable contract; (2) the plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; (3) the defendant breached the contract; and (4) the defendant's breach caused the plaintiff injury. *Winchek v. Am. Express Travel Related Servs.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

First, to the extent Brown brings this claim against TSU and TSUS, these defendants are shielded from suit by sovereign immunity. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997) (finding sovereign immunity applies to breach of contract suits). To the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these breach of contract claims against the individual defendants in their individual capacities, Brown fails to show how violations of the terms of an athletic scholarship—assuming for the moment the scholarship constitutes a contract between the parties—amounts to  conduct violating a clearly established constitutional right.  In other words, qualified immunity protects the individual defendants from these claims of breach of the scholarship. Because sovereign immunity and qualified immunity operate to shield the Defendants from the claims based on breach of contract, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

E.     **Retaliation**

Brown alleges all of the Defendants engaged in retaliation when they:

(1) cancelled the Plaintiff's athletic scholarship on May 2, 2013 after the Plaintiff's parents filed a complaint with the TSU President on January 31, 2013 alleging improper treatment from former coach, Doug Davalos, and a "promise" from Doug Davalos, guaranteed Plaintiff's Parents that the Plaintiff's scholarship would be taken if the former coach ever got fired, and (2) alleged that the Plaintiff's athletic scholarship was being cancelled for "athletic reasons" when the real reason had nothing to do with the Plaintiff's athletic performance and was for harassment, public humiliation, and defamation of character.

Am. Compl. [#51], at 43–44.

First, to the extent Brown brings this claim against TSU and TSUS, these defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these generalized retaliation claims against the individual defendants in their individual capacities, Brown fails to show how the cancellation of the scholarship after receipt of a complaint pertaining to improper treatment from a coach and a promise by the coach to cancel the scholarship if he ever got fired amounts to conduct violating a clearly established constitutional right.  In other words, qualified immunity protects the individual defendants from these claims of retaliation.  Because sovereign immunity and qualified immunity operate to shield the Defendants from the claims based on retaliation, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

In the alternative, the Court struggles to make sense of Brown's "retaliation" claim.  There is no general "retaliation" cause of action.  Several federal and state statutes contain anti-retaliation provisions, but Brown does not seem to rely on any of these, nor would they make sense.  For

instance, Title VII prohibits retaliation in the employer–employee context, and courts recognize causes of action in § 1983 cases for an employee's claim of retaliation based on free speech. *See* 42 U.S.C. § 2000c-3; *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 341 (5th Cir. 2003). Brown fails to make out the elements of any retaliation claim. Rather he and his parents submitted a complaint to TSU President Denise Trauth regarding alleged unfair treatment of Brown by the basketball coach because, among other things, he was denying him the opportunity to compete for playing time. Approximately four months later, his scholarship was cancelled. Brown does not identify any protected activity he engaged in nor does he identify the exercise of some constitutional right, which might begin to form the basis of some type of retaliation claim. On these alternative grounds, because Brown fails to state a claim based on retaliation, those claims must be dismissed.

**F.     Violation of FERPA and HIPAA**

Brown alleges all of the Defendants violated FERPA when:

(1) Robert Flaska shared the Plaintiff's very personal, private, confidential, extremely delicate, medical information to men's basketball player Joel Wright and Joel Wright, in turn, shared all of that information with other members of the men's basketball team at TSU, (2) Robert Flaska shared the contents of the Plaintiff's parents eight (8) page complaint to the TSU President, Defendant Denise Trauth, with Joel Wright who, in turn, shared the information with other members of the men's basketball team, (3) the Defendants denied the Plaintiff access to his own personal education records after making a request for the records on May 8, 2013 via a FERPA request for his records, (4) Fernando Gomez submitted the Plaintiff's personal identifiable information to the Texas Attorney General on May 30, 2013 without the Plaintiff's consent, (5) Herman Horn denied the Plaintiff access to his education records in possession, custody, or control of Chief Diversity Officer after the Plaintiff made a FERPA request for education records from Herman Horn on May 25, 2013, (6) Ismael Amaya denied the Plaintiff access to his education records in possession, custody, or control of Student Justice Center after the Plaintiff made a FERPA request for education records from Ismael Amaya on July 3, 2013, (7) Larry Teis and Daniel Kaspar failed to provide the Plaintiff access to all education records housed in the Department of Athletics, including men's basketball, at TSU after Plaintiff requested records on May 8, 2013.

Am. Compl. [#51], at 44–45.

Brown also briefly references violations of HIPAA for the same activity referenced in his FERPA allegations. *Id.* at 2–3.

First, to the extent Brown brings these claims against TSU and TSUS, these defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these claims based on violations of FERPA and HIPAA against the individual defendants in their individual capacities, Brown fails to show how any of the FERPA and HIPAA allegations, which relate to disclosures of private medical information and the denial of access to education records, amounts to conduct violating a clearly established constitutional right. In other words, qualified immunity protects the individual defendants from these claims of FERPA and HIPAA violations. Because sovereign immunity and qualified immunity operate to shield the Defendants from the claims based on FERPA and HIPAA, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

In the alternative, a violation of FERPA does not create a private cause of action for Brown. FERPA prohibits the federal funding of educational institutions which have a policy or practice of releasing education records to unauthorized persons. 20 U.S.C. § 1232g. FERPA does not create a private cause of action, so to the extent Brown's allegations are premised purely on a violation of FERPA, he fails to state a claim. Moreover, the Supreme Court has established FERPA's non-disclosure provisions do not create personal rights to enforce under § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002). In addition, a violation of HIPAA does not create a private cause of action. *See Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006) (per curiam). Because no private

causes of action exist for Brown to pursue under FERPA or HIPAA, his claims also fail on these alternative grounds and must be dismissed.

**G.      Violation of Due Process under the Fourteenth Amendment**

Brown alleges all of the Defendants violated his constitutional right to due process under the Fourteenth Amendment when:

> (1) Chris Murr failed to serve the Plaintiff with notice via email from the Director of Financial Aid and Scholarships, (2) Chris Murr failed to mail notice to the Plaintiff of the TSU Director of Financial Aid and Scholarship's decision to cancel the Plaintiff's, the Plaintiff's athletic scholarship, (3) Chris Murr failed to sign the email notice by the Director of Financial Aid and Scholarships, Chris Murr, (3) Chris Murr cancelled the Plaintiff's athletic scholarship for men's basketball for Summer I prior to scheduling and/or conducting a hearing on the Plaintiff's timely filed appeal of TSU's decision to cancel his athletic scholarship, (4) Herman Horn failed to investigate, and issue a final report, on Plaintiff's discrimination complaint filed wtih Herman Horn on May 3, 2013, (5) Ismael Amaya conducted a hearing with the Plaintiff regarding violations of TSU rules prior to providing Plaintiff with all education record, including actual complaint, in Ismael Amaya's possession, custody, or control.   The aforementioned acts are willful violations of the Plaintiff's Fourteenth Amendment right to notice . . .

Am. Compl. [#51], at 45–46.

First, to the extent Brown brings these claims against TSU and TSUS, these defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these claims based on violations of his due process rights against the individual defendants in their individual capacities, Brown fails to show how any of the allegations amount to conduct violating a clearly established constitutional right.  To state a claim for a due process violation, Brown must show he was deprived of a protected property interest, and the deprivation was done without adherence to due process minimums.  *Findeisen v. N. E. Indep.*

*School Dist.*, 749 F.2d 234, 237 (5th Cir. 1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)).  With respect to the meaning of a "protected property interest," "the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'." *Id.*  A property interest is created when a person has secured an interest in a specific benefit to which the individual has "a legitimate claim of entitlement." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  The interest must be more than an "abstract need or desire" or a "unilateral expectation of" the benefit. *Id.*

Brown fails to show the Court there are recognized property rights in his athletic scholarship or his continued participation on the men's basketball team.  Because there is no protected property interest at issue, Brown does not have a viable due process claim and cannot show any of the individual defendants violated a clearly established right.  Accordingly, qualified immunity protects the individual defendants from these claims of due process violations.  Because sovereign immunity and qualified immunity operate to shield the Defendants from the claims based on due process, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

## H.    Violation of Equal Protection under the Fourteenth Amendment

Brown alleges all of the Defendants violated his constitutional right to equal protection under the Fourteenth Amendment based on the same allegations related to his due process claim.

First, to the extent Brown brings this claim against TSU and TSUS, these defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these claims based on violations of equal protection against the individual defendants in their individual capacities, Brown fails to show how any of the

allegations amount to conduct violating a clearly established constitutional right.  "In order to state a claim for racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race."  *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 299, 238–42 (1976)).  The basis of an equal protection claim is the requirement all persons similarly situated should be treated alike.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1989); *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001).  In section XII of his amended complaint, which is the section explicitly containing his equal protection claim, Brown only mentions Defendants' conduct related to the cancellation of his scholarship.  Brown simply does not allege facts sufficient to demonstrate any of the Defendants were motivated by intentional discrimination on the basis of race as it related to the cancellation of his scholarship.

Brown, throughout his amended complaint, also makes various allegations against the coaching staff of the men's basketball team involving race.  Specifically, Brown alleges Coach Daniel Kaspar once said to a white member of the team, after Brown scored a basket against this white player in practice: "Basil is picking on the slow white boy and this is the third time he has driven by you to the basket."  Am. Compl. [#51], at 22.  On another occasion, Kaspar told Ray Dorsey, a player who was improperly executing a certain basketball move: "you wouldn't run from the cops in Dallas like that."  *Id.*  Brown does not identify Dorsey's race, but the suggestion would appear to be he is black.  On another occasion, Kaspar allegedly told another player, Gordon Ball: "you wouldn't run from the cops in Houston like that."  *Id.* at 23.  Again, Ball's race is not identified, but Brown would appear to be suggesting he is black.  On a fourth occasion, Kaspar told Jeremiah

Moore, a player: "you wouldn't run from the cops in West-Philly like that." *Id.* Once again, Moore's race is not identified, but it can be inferred he is black.

In addition, Brown claims on April 25, 2011, when Kaspar told Brown he was no longer going to be on scholarship or a member of the team, Brown asked why Kaspar was making this decision. Kaspar allegedly responded: "you wouldn't be happy with the playing time that you would be getting next season." *Id.* at 23. When Brown asked if he had been beaten out by two teammates, Reid Koenen—a white player—and Darius Richardson—whose race Brown notably fails to identify—Kaspar allegedly told Brown: "well Reid is a slow white boy and I'm not going to fault him for that and Darius is injured." *Id.* at 23–24.

Brown fails to establish a clear violation of his constitutional rights under the Equal Protection Clause for a number of reasons. First, he fails to show he was "similarly situated" with other players, and he was treated differently than these players who were similarly situated. With respect to the decision to remove Brown from the team, Brown only mentions two other players—Reid Koenen and Darius Richardson. While both of these players remained on scholarship and Brown did not, there is no indication these three were "similarly situated" for the purposes of an equal protection claim. It is unknown why Kaspar decided to keep Koenen, who was, according to Kaspar's alleged comments, slow and happened to be white, and Richardson, who was injured and whose race is unidentified. The allegations do indicate, however, Kaspar decided not to keep Brown because Brown was not going to be receiving much playing time, not because he was black. Brown does not establish he was "similarly situated" to Koenen and Richardson, and he does not describe whatsoever the composition of the rest of the basketball team, making it impossible to determine if he was "similarly situated" to other members of the team yet received different treatment because

he was black.  Brown's allegations do suggest at least three members of the team were black—Ray Dorsey, Gordon Ball, and Jeremiah Moore.  These three players were the recipients of Kaspar's alleged comments about running from the cops.  If there are other black players on the team, as there would appear to be according to Brown's Amended Complaint, an equal protection claim premised on the idea Brown was removed from the team because he was black is not plausible.

Second, with respect to the racially-charged comments Kaspar allegedly made at practice, while the Court does not condone these remarks, this fact does not make the comments actionable under the equal protection clause.  In *Williams v. Bramer*, the Fifth Circuit held a police officer's "use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."  180 F.3d 699, 706 (5th Cir. 1999).  The court further explained:

> When leveled against a citizen by a police officer, a racial epithet, by its nature, calls attention to the citizen's racial identity.  The use of an epithet is therefore strong evidence that a comment or action is racially motivated.  The question in the equal protection context, however, is not just whether the conduct is racially motivated but also whether that action deprives a person of "equal protection of the laws."  Where the conduct at issue consists solely of speech, there is no equal protection violation.

*Id.*  As an initial matter, while Kaspar's comments certainly were either racially-motivated or give rise to an inference of racial influence, he did not use a racial epithet.  He called Koenen a "slow white boy" and told, presumably, three black players, none of which were Brown, "you wouldn't run from the cops in [insert city] like that."  Most importantly for purposes of this case, though, these racially insensitive remarks directed at other players on the team "consist solely of speech" and did not deprive Brown of "equal protection of the laws."

Third, with respect to the comments Kaspar allegedly made while informing Brown he was no longer on the team, these remarks alone are insufficient to give rise to an equal protection claim and are too speculative to show Kaspar removed Brown from the team because he was black. Rather, Kaspar indicated he was not renewing Brown's scholarship because Brown would not be happy with his playing time. Brown appears to argue the fact Kaspar thought Koenen was a "slow white boy" but still kept him on the team must mean he discriminated against Brown because he was black. The Court is unwilling to take this inferential leap. There is no explanation why Kaspar kept Koenen, even though he was slow and white, just as there is no explanation why Kaspar kept Darius Richardson, even though he was injured. Kaspar's comments simply do not sufficiently support the theory Brown was removed from the team because he was black.

Because Brown cannot show the violation of a clearly established constitutional right, qualified immunity protects the individual defendants, in this claim Daniel Kaspar, from the claim of equal protection violations. Because sovereign immunity and qualified immunity operate to shield the Defendants from the claims based on the Equal Protection Clause, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

## I.   Violations of 42 U.S.C. § 1983

Brown alleges all of the Defendants violated 42 U.S.C. § 1983 based on the same allegations related to his due process and equal protection claims. To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (citations omitted) (en banc). "'State employment is generally sufficient to render the defendant a

state actor,'" and a defendant necessarily "acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n.18 (1982)).

First, to the extent Brown brings these § 1983 claims against TSU and TSUS, these defendants are shielded from suit by sovereign immunity. The Eleventh Amendment bars § 1983 suits against state governments in federal court. *See Quern*, 440 U.S. at 338 (1979). To the extent Brown brings these § 1983 claims against the individual defendants in their official capacity, these claims are also barred by sovereign immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Second, to the extent Brown brings these § 1983 claims against the individual defendants in their individual capacities, Brown fails to show how any of the allegations amount to conduct violating a clearly established constitutional right. In other words, qualified immunity protects the individual defendants from these § 1983 claims. As discussed throughout this Order, and most particularly in the above sections on alleged due process and equal protection violations, Brown does not demonstrate Defendants violated his constitutional rights. Because sovereign immunity and qualified immunity operate to shield the Defendants from Brown's § 1983 claims, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these § 1983 claims.

## J.     **"Discrimination of One"**

Brown alleges all of the Defendants violated his constitutional right to equal protection "and caused the discrimination of one" in violation of § 1983. The Court construes this allegation as a "class of one" equal protection claim. Brown claims Defendants engaged in such discrimination when they:

-20-

(1) allowed all of the other scholarship athletes in men's basketball to attend summer I and Summer II with full athletic scholarships while denying such to the Plaintiff even though the Plaintiff timely filed his appeal and is currently awaiting a hearing date prior to Summer I and the Plaintiff's full athletic scholarship for 2013-2014 academic year was renewed on June 17, 2013, (2) provided the Plaintiff with a grant-in-aid agreement for 2013-2014 academic year that is different from the grant-in-aid agreement signed by the other full scholarship athletes in men's basketball even though the Defendants decided to fully renew the Plaintiff's athletic scholarship for men's basketball for the 2013-2014 academic year without any rational basis for such different treatment.

Am. Compl. [#51], at 47–48.

First, to the extent Brown brings this "class of one" claim against TSU and TSUS, these defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings this "class of one" claim against the individual defendants in their individual capacities, Brown fails to show how the cancellation of his scholarship while allowing others to keep their scholarships amounts to conduct violating a clearly established constitutional right. In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000), the Court held the Equal Protection Clause can give rise to a cause of action on behalf of a "class of one" even when the plaintiff does not allege membership in a protected class or group. To state a claim sufficient for relief, a single plaintiff must allege an illegitimate animus or ill-will motivated her intentionally different treatment from others similarly situated and no rational basis existed for such treatment. *Id.* For reasons discussed in the above section on Brown's equal protection claims, his "class of one" claim also fails. Specifically, he fails to meet the "similarly situated" requirement, and he fails to show Daniel Kaspar's decision to remove Brown from the team was driven by an illegitimate animus or ill-will.

Because Brown cannot show the violation of a clearly established constitutional right, qualified immunity protects the individual defendants from the "class of one" claim of equal protection violations. Because sovereign immunity and qualified immunity operate to shield the Defendants from this "class of one" equal protection claim, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to this claim.

### K.      Disability Discrimination

Brown alleges all of the Defendants engaged in disability discrimination against him and references § 504 of the Rehabilitation Act and the Individuals with Disabilities in Education Act (IDEA). Brown claims Defendants discriminated against him based on his disability when:

> (1) the Defendants failed to inform the disability center on the TSU campus of the Plaintiff's temporary disability after his major surgery on September 6, 2011 that rendered him temporarily disabled thereby causing the Plaintiff to be denied such relief, and (2) Jason Karlic issued a decision regarding the Plaintiff's medical condition, that was relied on by TSU in TSU's refusal to pay Plaintiff's medical bills, that was not based upon any sound medical doctrine but upon Jason Karlic's personal, unfounded, opinion.

Am. Compl. [#51], at 48–49.

First, to the extent Brown brings these disability discrimination claims against TSU and TSUS, these defendants are shielded from suit by sovereign immunity, and to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these disability discrimination claims against the individual defendants in their individual capacities, Brown fails to show how the Defendants' failure to notify the disability center of his temporary disability, Jason Karlic's determination Brown was not injured while playing basketball, or TSU's refusal to pay Brown's medical bills amounts to conduct violating a clearly established constitutional right. In other words, qualified immunity

protects the individual defendants from these disability discrimination claims.  Because sovereign

immunity and qualified immunity operate to shield the Defendants from the disability discrimination

claims, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

In the alternative, Brown fails to state a claim under either § 504 of the Rehabilitation Act

or IDEA.  Section 504 of the Rehabilitation Act prohibits "discrimination against qualified

individuals." *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 878–79 (S.D.

Tex. 2012) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  The Fifth Circuit has not

set forth a clear *prima facie* standard for § 504, but one standard used by district courts requires the

plaintiff to prove: "(1) [he] has a disability; (2) [he] is otherwise qualified to participate in the

defendant's program; and (3) [he] was excluded from the program on the basis of [his] disability."

*Maples*, 901 F. Supp. 2d at 879–80 (citing *Halperin v. Wake Forest Univ. Health Scis.*, 669 F.3d

454, 461 (4th Cir. 2012)).

First, Brown does not establish he had a "disability."  The definition of "disability" set forth

in the Americans with Disabilities Act (ADA) is applicable to claims under the Rehabilitation Act,

and the ADA defines a disability as: "(A) a physical or mental impairment that substantially limits

one or more major life activities of such individual; (B) a record of such impairment; or (C) being

regarded as having such an impairment."  *Kemp*, 610 F.3d at 235 (citing 42 U.S.C. § 12102(1)).

Brown merely states, in a conclusory fashion, he was "temporarily disabled" after "major surgery."

Second, it is unclear from what "program" Brown was excluded.  If he is referring to the basketball

team, the claim cannot stand because Brown continued to participate as a member of the basketball

team.  If he is referring to some policy by which athletes on scholarship who are injured while

participating in team-related activities have their medical bills paid by the school, then Brown does

-23-

not make this clear.  Third, Brown asserts no facts to support exclusion from the "program" was based on his "disability."  Assuming Brown established a "disability" and assuming the "program" at issue is a policy of paying for a scholarship athlete's medical bills under certain conditions, Brown was not excluded based on his "disability."  Rather, Karlic determined Brown was not injured while playing basketball, and this was the basis for exclusion from the "program."  On these alternative grounds, Brown's claims under the Rehabilitation Act are dismissed.

Brown also fails to state a claim under IDEA, which, among other things, mandates a "free public education" for children and sets forth procedures which are "designed to ensure an education that meets minimal requirements."  *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999) (citing 20 U.S.C. § 1412(1) & 1415(a)–(e)).  IDEA requires a state provide services to qualified children who are between the ages of three and twenty-one years old.  20 U.S.C. §§ 1412(a)(1).  The wording of the statute makes clear IDEA does not apply to institutions of higher education.  *See* 20 U.S.C. § 1401(27) (limiting "secondary school" to the twelfth grade).  No provisions of IDEA extend to colleges or universities.  IDEA is simply inapplicable to Brown's allegations, and his IDEA claims are dismissed on this alternative basis.

## L.   Collusion

Brown alleges all of the Defendants engaged in collusion when they colluded to:

(1) cancel the Plaintiff's scholarship for "athletic reasons" even though such is not allowed by the NCAA and , (2) deny the Plaintiff access to his education records in a timely manner with the hope of obtaining a dismissal order in these proceedings before providing the Plaintiff access to these records, (3) obtain a favorable ruling from the Texas Attorney General thereby denying the Plaintiff access to the Plaintiff's own educational records while clearly knowing it was unlawful for TSU to provide the Plaintiff's personally identifiable information to the Texas Attorney General without the Plaintiff's consent in an effort to unlawfully obtain a favorable ruling in this cause without ever providing the Plaintiff access to those records, issue

-24-

an unfounded opinion as to the Plaintiff's medical condition in an effort to deny paying the Plaintiff's unpaid medical bills.

Am. Compl. [#51], at 49–50.

First, to the extent Brown brings these collusion claims against TSU and TSUS, these defendants are shielded from suit by sovereign immunity. State agencies in Texas enjoy sovereign immunity from suits for intentional torts unless expressly waived by the Texas Tort Claims Act (TTCA). *See Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994). The TTCA does not waive sovereign immunity for intentional torts. TEX. CIV. PRAC. & REM. § 101.057(2). Moreover, Section 101.102(a) provides: "[a] suit under this chapter shall be brought *in state court* in the county in which the cause of action arose or a part of the cause of action arises." TEX. CIV. PRAC. & REM. CODE § 101.102(a) (emphasis added). Therefore, Brown could not bring this tort claim in federal court even if immunity had been waived for intentional torts. And to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings these collusion claims against the individual defendants in their individual capacities, Brown fails to show how cancelling his scholarship, denying him access to his education records, or obtaining a favorable ruling from the Texas Attorney General on the applicability of the attorney–client privilege to the documents requested by Brown amounts to conduct violating a clearly established constitutional right. In other words, qualified immunity protects the individual defendants from these collusion claims. Because sovereign immunity and qualified immunity operate to shield the Defendants from the collusion claims, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

In the alternative, Brown fails to state a claim because collusion is not a separate cause of action in Texas, and Brown cites no authority indicating otherwise. To the extent, Brown's collusion claim can be construed as a civil conspiracy claim, he again fails to make out the basic elements of such an action. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) ("The essential elements [of a civil conspiracy] are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.").

## M.    Gross Negligence

Brown alleges all of the Defendants were grossly negligent when they:

> (1) forced the Plaintiff to lift additional weights while the Plaintiff was still recovering from a major surgery less than four months earlier while knowing that the doctor's order after surgery forbid such without any disregard to the safety of the Plaintiff.

Am. Compl. [#51], at 50.

First, to the extent Brown brings this gross negligence claim against TSU and TSUS, these defendants are shielded from suit by sovereign immunity. While the TTCA waives sovereign immunity for the State, the waiver is limited, and Brown does not state facts sufficient to invoke the limited waiver provided in TEX. CIV. PRAC. & REM. § 101.021(2). This provision provides: "A governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to claimant according to Texas law." TEX. CIV. PRAC. & REM. § 101.021(2). Defendants did not "use" the weight-lifting equipment for purposes of the TTCA. *See Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005) ("A governmental unit does not 'use' personal property merely

by allowing someone else to use it and nothing more."(quoting *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004))).  Moreover, even if Brown had stated sufficient facts to bring his negligence claim, Section 101.102(a) of the TTCA requires lawsuits brought pursuant to the TTCA be filed in state court, not federal court.  And to the extent he sues the individual defendants in their official capacity, these claims are also barred by Eleventh Amendment.

Second, to the extent Brown brings this gross negligence claim against the individual defendants in their individual capacities, Brown fails to show how "forcing" Brown to lift weights while knowing he was recovering from surgery and not yet cleared by his doctor to lift weights amounts to conduct violating a clearly established constitutional right.  In other words, qualified immunity protects the individual defendants from these disability discrimination claims.  Because sovereign immunity and qualified immunity operate to shield the Defendants from the disability discrimination claims, the Court GRANTS Defendants' Amended Motion to Dismiss with respect to these claims.

In the alternative, Brown fails to make out a claim for negligence, which requires a showing: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached the duty, and (3) the breach proximately caused the plaintiff's injury.  *See Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Brown does not identify a duty owed by any of the Defendants, nor does he show those duties were breached.  On these alternative grounds, Brown's claim for negligence must be dismissed.

III.    **Amended Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Education Records**

In the Order of November 12, 2013 [#91], the Court addressed an ongoing discovery dispute. In essence, Brown had made certain requests for documents on May 8, 2013 pursuant to the Public Information Act (PIA) and FERPA, and TSU had provided Brown with the pertinent information with the exception of approximately thirty-four emails TSU withheld on the grounds of attorney–client privilege. The Court reviewed under seal and *ex parte* the withheld documents, and determined the information was privileged except for some attachments to the emails which consisted of communications where either Brown or Brown's parents were either the sender or recipient of the message. The Court also stated it would not consider any more discovery disputes (specifically requests made by Brown for information on May 25, 2013, and June 1, 2013) until handling the motion to dismiss stage of this matter.

On November 22, 2013, Brown filed an Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Education Records [#94], and on November 25, 2013, Brown filed an Amended Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Educational Records [#96].

A.    **Legal Standard—Motion to Reconsider**

The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" by that name, and Brown did not provide a rule of procedure under which he urges its motion. A court may reconsider an interlocutory order pursuant to Federal Rule of Civil Procedure 54(b). While the Court has authority to reconsider and reverse its decision for any reason it deems sufficient, district courts consistently utilize the standards of Federal Rule of Civil Procedure 59 to inform their analysis of

-28-

a reconsideration request. *Sawqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)); *Vladamir Ltd. v. Pac. Parts Supply Co.*, No. SA-08-CV-819-XR, 2009 WL 4110288, at *2 (W.D. Tex. Nov. 20, 2009).  To prevail on a Rule 59 motion, the movant must show at least one of the following: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear or manifest error of law or fact or to prevent manifest injustice.  *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).  Brown's motion appears to be premised on the argument reconsideration is necessary to correct an error of law or fact, or to prevent manifest injustice.

**B.    Application**

In sum, Brown's Amended Motion to Reconsider merely rehashes arguments previously raised in support of his motions.  For the reasons previously stated in this Court's Order of November 12, 2013, the motion is DENIED.

Brown again complains Defendants submitted information to the Open Records Division of the Office of the Attorney General (OAG) for a determination of the applicability of attorney–client privilege, and unlawfully included Brown's "personally identifiable information" and/or his "personal education records."  What information Brown is referring to remains a complete mystery to the Court.  In response to Brown's request for information, Defendants provided Brown documents with the exception of thirty-four emails. This Court reviewed those emails, which mostly consisted of communications between TSU's lawyers and its employees.  The Court made sure any attachments with Brown or his parents as communicating parties were not covered by the attorney–client privilege.  The Court does not understand what "personally identifiable information"

or what "personal education records" Brown continues to seek, and Brown does not help the Court by explaining the nature of this desired information.   Nevertheless, Brown continues to assert Defendants are "withhold[ing] several of the Plaintiff's own personal education records in which the Plaintiff is not a sender, or receiver, of the education record duly requested by the Plaintiff on May 8, 2013, May 25, 2013, and July 1, 2013 by claiming the attorney client privilege exception."  Pl.'s Am. Emergency Mot. to Reconsider [#96], at 3.  To the extent Brown is arguing the communications between TSU's lawyers and its employees—the only documents being withheld from Brown—constitute Brown's "personally identifiable information" or "personal education records" under FERPA, the Court rejects this argument, and Brown cites no authority to support such a contention.

## IV.   Motion for Extension of Time

On December 9, 2013, Brown filed a Motion for Extension of Time to File a Response to the Amended Motion to Dismiss [#99].  Brown asserts a number of supposed grounds for his motion.  First, Brown continues to insist he needs the "personal education records," which Defendants are withholding from him under the pretense of attorney–client privilege, in order to substantiate his claims of unlawful discrimination and retaliation.  Because, as of the filing of Brown's motion, the Court had not ruled on his Amended Emergency Motion to Reconsider [#94], Brown claims he cannot effectively file a response to the Amended Motion to Dismiss.

Second, Brown tells the Court:

Beginning on November 5, 2013, the Plaintiff was in the midst of a severe weather ice storm since December 5, 2013.  The location where the Plaintiff routinely does his legal research was closed due to severe hazardous weather conditions.  All other locations were also closed.  As a result, the Plaintiff was unable to do the legal

research necessary to prepare a response to the Defendant's amended motion to dismiss filed in this cause on November 18, 2013.

Pl.'s Mot. Extend [#99], at 3.

Third, Brown asks for additional time because from December 9, 2013, until December 13, 2013, "Plaintiff's senior year has come to final exams. As a result, the Plaintiff will be unable to even begin any legal research necessary to prepare a response. . . ." *Id.*

Brown's motion is DENIED for the following reasons. First, the Amended Motion to Dismiss was filed November 18, 2013, giving Brown fourteen days, or until December 2, 2013, to file his response. *See* Local Court Rule CV-7(e)(2). He now files his Motion for Extension on December 9, 2013, approximately a week after the response was due. Second, Brown further indicates he has not even started work on his response considering he states he "will be unable to even begin any legal research" until the final exam period is over. Third, he does not even indicate a day by which he will have his response ready. Fourth, the Amended Motion to Dismiss is substantively the same as the original Motion to Dismiss [#35], and Brown filed a Response [#59] to this original Motion to Dismiss, indicating he has previously done the bulk of the legal research necessary to file a response. Fifth, despite Brown's insistence to the contrary, he does not need, nor will he receive as reflected in this Order, the documents being withheld by Defendants under the attorney–client privilege; Brown's ability to file a Response to the Amended Motion to Dismiss has nothing to do with this discovery issue. Sixth, Brown's claims of a "severe weather ice storm" lasting apparently from November 5, 2013 until December 5, 2013, strains the Court's patience. Or perhaps Brown is suggesting the "severe weather ice storm" began December 5, 2013 and lasted until an unspecified date; his motion is unclear. Of course, if the storm began December 5, 2013,

it should bear little on the matter since the response was due December 2, 2013. Assuming for the moment there is any merit whatsoever to this excuse, Brown fails to specify where he has been, what weather storm he refers to, where exactly he routinely conducts his legal research, or his contention "all other locations were also closed." He also has consistently submitted filings in this matter since November 18, 2013, when the Amended Motion to Dismiss was filed, casting doubt on his suggestion he could not possibly file a response, including: (1) Motion for Reconsideration [#94] on November 22, 2013; (2) Notice of Appeal of Interlocutory Orders [#95] on November 22, 2013; (3) Amended Motion for Reconsideration [#96] on November 25, 2013; (4) Reply to Response to Amended Motion for Reconsideration [#97] on December 8, 2013; and (5) this Motion for Extension [#99] on December 9, 2013. Considering all these circumstances, the Court declines to give Brown extra time to file his response.

## Conclusion

A review of the docket sheet in this matter demonstrates, as does the length of this Order, Plaintiff Brown has occupied significant resources of this Court since he filed his lawsuit on June 5, 2013. Brown's multitude of motions—all of which have been denied—include, five motions for temporary restraining orders, two motions for preliminary injunctions, motions to amend this Court's orders, motions to reconsider this Court's orders, multiple complaints, multiple emergency motions to compel, and so on and so forth. Nowhere in this endless barrage of paper does Brown state a claim for the violation of any recognized constitutional right or demonstrate liability on behalf of any of the thirteen Defendants he sues. While the Court does not doubt the sincerity of Brown's belief he has been wronged by the actions of Texas State University and its employees, this passion does not give this Court jurisdiction over his dilemma. Nor does this belief excuse his refusal to

acknowledge the obvious, which should have been clear to him from the moment his first motion for a TRO was denied on the grounds he failed to demonstrate a substantial likelihood of success on the merits: the federal courts do not have subject matter jurisdiction over his claims, and his allegations, as pled, do not state a claim upon which relief can be granted.  As it were, he has persisted, undaunted by this Court's orders, and in so doing has occupied substantial amounts of the Court's time, effort, and expenses, not to mention those of Texas State University and its employees. In the Court's view, this case should be closed, and while the Court has considered imposing Rule 11 sanctions and attorneys' fees to be paid by Brown to Defendants, the Court ultimately decided against it, hoping instead Brown might receive this Order as his wake up call.

Because this Court has no jurisdiction over Brown's claims, because Brown fails to state a claim upon which relief can be granted, and because Brown has received more than his fair share of attention from this Court: (1) Defendants' Amended Motion to Dismiss is GRANTED, (2) Plaintiff's Amended Emergency Motion to Reconsider is DENIED, and (3) Plaintiff's Motion for Extension of Time is DENIED.

Accordingly,

IT IS ORDERED that Defendants' Amended Motion to Dismiss [#93] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Education Records [#94] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Plaintiff's Amended Emergency Motion to Reconsider Order Denying Plaintiff Access to Plaintiff's Own Educational Records [#96] is DENIED;

IT IS FURTHER ORDERED that Plaintiff's claims against Defendants are DISMISSED WITHOUT PREJUDICE;

IT IS FINALLY ORDERED that Plaintiff's Motion for Extension of Time to File Response to Defendants' Amended Motion to Dismiss [#99] is DENIED.

SIGNED this the ___11___ day of December 2013.


SAM SPARKS
UNITED STATES DISTRICT JUDGE